IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| KATINA BOOKER, <br><br> Plaintiff, <br><br> v. <br><br> QUIKTRIP CORPORATION, et al., <br><br> Defendants. | CIVIL ACTION FILE <br> NO. 1:22-CV-715-TWT |

### OPINION AND ORDER

This is a personal injury action. It is before the Court on the Defendant QuikTrip Corporation's Motion for Summary Judgment [Doc. 19]. For the reasons set forth below, the Defendant QuikTrip Corporation's Motion for Summary Judgment [Doc. 19] is GRANTED.

### I. Background

The Plaintiff, Katina Booker, alleges that she suffered serious injuries as a result of a slip-and-fall accident at a QuikTrip convenience store on July 9, 2020. (Compl. ¶¶ 6-8.) The accident occurred near the store's fountain dispensary as she was reaching for a lid to cover her drink. (*Id.* ¶ 7.) Video footage of the incident shows that the Plaintiff entered the store through a back entrance and walked past a wet floor sign, which was positioned next to the fountain drink station. (Park Aff., Exs. A-B.) The footage also shows that the Plaintiff stood close to and looked in the direction of a QuikTrip employee as he was mopping the floor before her fall. (Park Aff., Exs. C-E, H.) Even though

the employee was working around the fountain drink station, the Plaintiff claims that she did not see him because she was so focused on getting an ice-cold Coke. (Booker Dep. at 57:10-21.) The Plaintiff's companion, Calvin Swinger, does admit to having seen the employee, though. (Def.'s Statement of Undisputed Material Facts ¶ 4.)

In several frames of the video footage, the Plaintiff and Swinger are seen standing on parts of the floor that had just been mopped and were still glistening wet. (*Id.* ¶ 8; Park Aff., Exs. F-J.) There is no suggestion from the Plaintiff that the mopping solution contained anything other than water. (Def.'s Statement of Undisputed Material Facts ¶ 10.) According to the Plaintiff, she did not notice the water until after she fell; Swinger also noticed the water after the fall, although he could not recall if he had seen it earlier. (*Id.* ¶¶ 12-13, 15.) However, the store footage shows the Plaintiff bending down at one point to pick something up from the floor—either on or next to an area that had been recently mopped. (Park Aff., Ex. E.) Again, the Plaintiff's sole explanation for not seeing the water sooner was that she wanted a Coke "so bad." (Def.'s Statement of Undisputed Material Facts ¶ 14.) The Plaintiff admits that there was no defect or other issue with the lighting inside the store that caused her fall. (*Id.* ¶¶ 16-17.) She also admits that nothing was distracting her as she moved through the store. (*Id.* ¶ 6.)

On January 12, 2022, the Plaintiff filed suit against the owner and operator of the store, the Defendant QuikTrip Corporation, alleging one claim

for negligence. (Compl. ¶¶ 9-16.) The complaint was filed in state court in Gwinnett County, Georgia, and then removed by the Defendant to this Court on February 21, 2022, under diversity jurisdiction. Now pending before the Court is the Defendant's Motion for Summary Judgment as to the sole count.

## II.  Legal Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a), (c). The court should view the evidence and draw any inferences in the light most favorable to the nonmovant. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

## III.  Discussion

In Georgia, "[w]here an owner or occupier of land, by express or implied invitation, induces or leads others to come upon his premises for any lawful purpose, he is liable in damages to such persons for injuries caused by his failure to exercise ordinary care in keeping the premises and approaches safe." O.C.G.A. § 51-3-1. The duty of ordinary care does not require an owner or

operator to warrant the safety of all people from all things. Rather, his obligation is to "exercise the diligence toward making the premises safe that a good business person is accustomed to use in such matters." *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1997). "This includes inspecting the premises to discover possible dangerous conditions of which the owner/occupier does not have actual knowledge, and taking reasonable precautions to protect invitees from dangers foreseeable from the arrangement or use of the premises." *Id.* Georgia law also imposes a duty of care on invitees upon entering another's premises: namely to "exercis[e] ordinary care for personal safety and us[e] ordinary care to avoid the effect of the owner/occupier's negligence after that negligence becomes apparent to the invitee or in the exercise of ordinary care the invitee should have learned of it." *Id.* at 741. What constitutes reasonable care depends on all the circumstances at that particular time and place. *See id.*

In slip-and-fall cases like this one, the plaintiff must plead and prove two elements to recover for his injuries: (1) the defendant had actual or constructive knowledge of the hazard, and (2) the plaintiff lacked knowledge of the hazard, despite the exercise of ordinary care, due to actions or conditions within the defendant's control. *See id.* at 748. In *Robinson*, the Georgia Supreme Court sought to correct what it termed a "pendulum-like" swing in favor of defendants in premises liability cases. *Id.* at 735-36. To that end, the court clarified the burdens of production that apply to each party on summary judgment. *See id.* at 746-48. First, to survive a motion for summary judgment,

4

the plaintiff must come forward with evidence that would enable a rational trier of fact to find that the defendant had actual or constructive knowledge of the hazard. *See Am. Multi-Cinema, Inc. v. Brown*, 285 Ga. 442, 444-45 (2009). Then, the burden shifts to the defendant to produce evidence that the plaintiff's injury was caused by his own voluntary negligence (i.e., intentional disregard of a known risk) or causal negligence (i.e., failure to exercise ordinary care for his personal safety). *See id.* at 445. If the defendant makes this showing, the burden shifts back to the plaintiff to create a genuine issue of fact as to his voluntary or causal negligence or to show that his negligence resulted from actions or conditions under the defendant's control. *See id.* The *Robinson* court emphasized that these questions "are generally not susceptible of summary adjudication," so courts should only award summary judgment "when the evidence is plain, palpable, and undisputed." *Robinson*, 268 Ga. at 748.

In the Court's view, this is just such a case. As an initial matter, the Defendant does not dispute that it had actual or constructive knowledge of the slipping hazard. Instead, the parties' briefs focus on the second element of premises liability: whether the Plaintiff had equal knowledge of the hazard or lacked knowledge due to her failure to exercise ordinary care. (Def.'s Br. in Supp. of Def.'s Mot. for Summ. J., at 10-14; Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 9-11.) On this issue, there is substantial evidence in the Defendant's favor. First, the Plaintiff walked past a wet floor sign that was placed next to the fountain drink station—mere feet from where she fell about

5

two minutes later. Second, the Plaintiff stood close to, and even appeared to glance at, the employee mopping the floor. Although she claims not to have noticed him, Swinger did. Third, the Plaintiff was standing in areas with visible water and bent down to pick something up off the recently mopped floor. Again, the Plaintiff claims that she did not see the water until she fell. But she also admits that there were no distractions in the store and no issues with the lighting that could have caused the accident.

"In the exercise of ordinary care, the invitee must use all senses to discover and avoid hurtful things." *Robinson*, 268 Ga. at 741. Here, there were at least three circumstances that should have alerted the Plaintiff, acting as an ordinarily careful person, to the risk of slipping: (1) the wet floor sign, (2) the employee mopping, and (3) the visible wetness on the floor. Thus, the Court finds that the Defendant has met its burden of production to show that the Plaintiff was injured by her own negligence. In response, the Plaintiff addresses only the first circumstance. She argues that the wet floor sign was located in an area that appeared dry, where the employee was not presently mopping, and where it was not visible at the moment of her fall. (Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J., at 10-11.) The Court is not persuaded. The video evidence shows that the sign was positioned at the endcap of a snack aisle—beside the fountain drink station and one aisle over from where the Plaintiff slipped reaching for a lid. True, the Plaintiff may not have been able to see the sign when she fell, but she cannot claim that she never saw it or that

6

she never could have seen it using ordinary care. As mentioned, she passed within inches of the sign as she was entering the store. The Plaintiff also cites no evidence to support that her negligence was the product of the Defendant's own actions or conditions within its control.

The Plaintiff's reliance on *Belcher v. Kentucky Fried Chicken Corp.*, 266 Ga App. 556 (2004), is thus misplaced. There, the plaintiff, Belcher, slipped and fell on a wet floor as she was using the men's restroom at a KFC restaurant. Belcher was advised by her sister to use the men's restroom because the ladies' restroom was flooded and a KFC employee had told her to do the same. On her way to the men's restroom, Belcher noticed a warning cone in the hallway between the men's and ladies' restrooms, but there was no warning cone inside the restroom itself. *See Belcher*, 266 Ga. App. at 557-58. On this record, the Georgia Court of Appeals could not conclude, as a matter of law, that Belcher failed to exercise ordinary care for her own safety: "KFC directed female patrons to the men's restroom because of a problem with the ladies' restroom. And it failed to indicate, by use of additional warning cones or other means, that its water problem extended into the men's restroom." *Id.* at 560. Here, by contrast, the Defendant did not direct the Plaintiff to use a particular area of the store under the false impression that it was safe. Nor did the Defendant fail to place a wet floor sign in the room or area with the wet floor. Further, even if the placement of the sign were a problem, the Plaintiff does not address her failure to notice the employee mopping in front of her or

7

her failure to spot the visible water on the floor.

This case is instead more akin to *Smith v. NT Nails, LLC*, 331 Ga. App. 98 (2015); *Weickert v. Home Depot U.S.A., Inc.*, 347 Ga. App. 889 (2018); and *Stockstill v. Prime Foods System, Inc.*, 216 Ga. App. 192 (1995). In *Smith*, the plaintiff was the last customer in a nail salon and watched as an employee mopped the entire floor while she received a pedicure. When the nail technician finished her pedicure, the plaintiff walked across the floor to leave and fell, injuring herself. *See Smith*, 331 Ga. App. at 98. The court granted summary judgment to the nail salon, holding that the plaintiff had disregarded a known risk by walking on the recently mopped floor. *See id.* at 99. In *Weickert*, the plaintiff slipped and fell in a garden center where the floor was visibly wet and surrounded by caution signs. *See Weickert*, 347 Ga. App. at 889-90. Again, the court awarded summary judgment to the garden center: not only had the garden center exercised ordinary care by placing several caution signs on the floor, but the alleged distractions to the plaintiff were all created by himself, not the garden center. *See id.* at 890, 894-95. Finally, in *Stockstill*, the plaintiff was sitting in a Hardee's restaurant while an employee mopped the floor with clean warm water; the employee also placed at least four warning signs around the dining area. The plaintiff claimed that she did not see the signs or the employee mopping before she fell, but there was no evidence that she was prevented from seeing them by a distraction created by the defendant. *See Stockstill*, 216 Ga. App. 192, 192 (1995). The court found that even if the

8

plaintiff did not see the signs, the restaurant exercised ordinary care in the manner of mopping and thus was entitled to summary judgment. *See id.* at 193.

In this case, the record is clear that the Plaintiff either had actual knowledge or, through the exercise of ordinary care, should have learned about the wet floor in the QuikTrip store. Her claim that she innocently missed all indications of a hazard are unavailing since she admits that there were no distractions in the store—other than her craving for a Coke. She also offers none of her own evidence in an effort to create a fact issue on the question of her negligence. Accordingly, the Court finds that the Defendant has met its burden on summary judgment: that is, to prove that the Plaintiff's injury was caused, at a minimum, by her failure to exercise ordinary care for her personal safety. Summary judgment is appropriate, then, on the Plaintiff's sole claim for negligence.

## IV. Conclusion

For the foregoing reasons, the Defendant QuikTrip Corporation's Motion for Summary Judgment [Doc. 19] is GRANTED. The Clerk of the Court is directed to enter judgment in favor of the Defendant QuikTrip Corporation and to terminate this case.

SO ORDERED, this ___27th___ day of February, 2023.

THOMAS W. THRASH, JR.
United States District Judge